F I L E D
CLERK, U.S. DISTRICT COURT
2/27/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 2:24-cr-00127-JFW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1832(a)(1), (2): Theft of Trade Secrets; 18 U.S.C. § 1001(a)(2): Making False Statements; 18 U.S.C. §§ 1834 and 2323: Criminal Forfeiture] |
| CHENGUANG GONG, | |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A.  The Victim Company

    1.  The Victim Company was a physical science and engineering research and development laboratory headquartered within the Central District of California.  The Victim Company conducted research, development, and manufacturing in ultra-high-performance circuitry, robust computing and communications, automated data extraction, and innovative architected materials for use in the space, aircraft, automobile, and consumer products industries.

    2.  The Victim Company maintained several laboratories,

including a laboratory that researched and developed sophisticated infrared sensors with high sensitivity, low noise, and high dynamic range.  The Victim Company was under contract to develop these sensors for use in space-based missile warning and tracking, space-based surveillance, and airborne infrared countermeasures systems, including by the U.S. Department of Defense.  The Victim Company, together with the U.S. government and others, invested tens of millions of dollars each year for more than seven years to develop its sensor technologies.

B.   <u>The Defendant</u>

3.   From on or about January 30, 2023, through on or about April 26, 2023, defendant CHENGUANG GONG ("GONG") was employed by the Victim Company in Camarillo, California, in Ventura County, within the Central District of California.  Defendant GONG worked as an application-specific integrated circuit manager responsible for managing the design, development, and performance of the readout integrated circuits used in the Victim Company's infrared sensors.

4.   Prior to his employment at the Victim Company, from the late 1990s to 2023, defendant GONG worked for a number of prominent U.S. technology companies, as well as an international defense, aerospace, and security company.  From approximately 2010 to May 2014, defendant GONG worked as an integrated circuit design manager for a U.S. information technology company in Santa Clara, California ("Company 1").  From approximately May 2015 to October 2019, defendant GONG was a complementary metal-oxide semiconductor image sensor design manager for the U.S. subsidiary of an international defense, aerospace, and security company in San Jose, California ("Company 2").

5. From at least 2014 to 2022, including while defendant was employed at Companies 1 and 2, defendant GONG submitted numerous applications to so-called "Talent Programs" established by the People's Republic of China ("PRC") to identify individuals located outside the PRC who have expert skills, abilities, and knowledge that would aid in transforming the PRC's economy, including its military capabilities. The PRC government rewards Talent Program recruits with significant financial and social incentives.

C. The Victim Company's Trade Secrets

6. The Victim Company developed proprietary infrared sensor technology intended for use in various space-based and military missions, including in systems designed to detect nuclear missile launches and track ballistic and hypersonic missiles. Sophisticated readout integrated circuit technology is required to collect electrical signals from large infrared photo detector arrays and output the data in a manner that achieves the high dynamic range, low noise, high resolution, and fast readout rate performance required to detect and track missiles and identify other threats. The Victim Company developed multiple trade secrets associated with its proprietary sensor technology. These trade secrets included the following technologies (collectively, the "Trade Secrets") owned by the Victim Company, each of which met the definition of trade secrets as defined in 18 U.S.C. § 1839(3) and related to products intended for use in interstate and foreign commerce:

a. The Serrano Technology: The Serrano Readout Integrated Circuit technology (the "Serrano Technology") combined the functionality of infrared search-and-track with infrared countermeasures into a single chip in a manner that offered both high

dynamic range (to track threats in low visibility settings) and time-of-flight capabilities (to analyze how quickly the threat is approaching).  The Serrano Technology consisted of the designs, methods, techniques, processes, procedures, testing results, and specifications -- both successful and unsuccessful -- regarding the design, manufacture, and operation of the Serrano Readout Integrated Circuit, each of which constituted a trade secret.  The Serrano Technology was proprietary to and owned by the Victim Company, and was documented in a series of non-public electronic files held by the Victim Company.

   b. <u>The Anaheim Technology</u>:  The Anaheim Readout Integrated Circuit technology (the "Anaheim Technology") combined the features of high sensitivity, a wide field of view, small pixel pitch, command and data handling, and radiation hardening in a manner that enabled it to reliably detect missile launches and track ballistic and hypersonic missiles in space-based systems.  The Anaheim Technology consisted of the designs, methods, techniques, processes, procedures, testing results, and specifications -- both successful and unsuccessful -- regarding the design, manufacture, and operation of the Anaheim Readout Integrated Circuit, each of which constituted a trade secret.  The Anaheim Technology was proprietary to and owned by the Victim Company, and was documented in a series of non-public electronic files held by the Victim Company.

   c. <u>The Mechanical Technology</u>:  The Victim Company designed proprietary compact Integrated Dewar Cooler Assemblies (the "Mechanical Technology") to mechanically enclose and cryogenically cool the Serrano and Anaheim Readout Integrated Circuits.  The Mechanical Technology consisted of the designs, methods, techniques,

4

processes, procedures, testing results, and specifications -- both successful and unsuccessful -- regarding the development of compact Integrated Dewar Cooler Assemblies for use with the Victim Company's sensors, each of which constituted a trade secret. The Mechanical Technology was proprietary to and owned by the Victim Company, and was documented in a series of non-public electronic files held by the Victim Company.

7. The Victim Company considered all research and development work related to the Trade Secrets to be confidential and proprietary. The Trade Secrets were not generally known to the public or to others outside the Victim Company who would be able to obtain economic value from the information, nor were the Trade Secrets readily ascertainable using proper means by such persons. The Trade Secrets derived independent economic value from not being generally known or readily ascertainable by proper means by such persons, and the disclosure of the Trade Secrets would be extremely damaging to the Victim Company.

D.  <u>Defendant GONG Transferred the Victim Company's Trade Secrets to His Personal Storage Devices Without Authorization</u>

8. From on or about March 30, 2023, to on or about April 25, 2023, while working at the Victim Company, defendant GONG transferred thousands of proprietary files belonging to the Victim Company without authorization to a personal Verbatim flash drive and two personal Western Digital external hard drives. These files included documents marked as "[Victim Company] PROPRIETARY," "EXPORT CONTROLLED," "FOR OFFICIAL USE ONLY," "PROPRIETARY INFORMATION," and "contain[ing] technical data within the definition of the International Traffic in Arms Regulations and [] subject to the

5

export control laws of the U.S. Government."  On or about April 26, 2023, the Victim Company terminated defendant GONG's employment.

9.   Defendant GONG began employment on or about May 1, 2023, as a Senior Manager of Digital and Analog Mixed Signal Integrated Circuit Design at Company 3, which designed, tested, and manufactured high-performance imaging systems, including readout integrated circuits, for military, space, and commercial applications.

COUNTS ONE TO THREE

[18 U.S.C. § 1832(a)(1), (2)]

The Introductory Allegations set forth in paragraphs One through Nine of this Indictment are incorporated herein as if set forth in full.

On or about the dates indicated below, in Ventura County, within the Central District of California, and elsewhere, defendant CHENGUANG GONG, with the intent to convert a trade secret to the economic benefit of someone other than the Victim Company, and intending and knowing that the offense would injure the Victim Company, knowingly stole, and without authorization appropriated, took, and carried away, and without authorization copied, duplicated, downloaded, and uploaded the following trade secrets, each related to a product or service used in and intended for use in interstate and foreign commerce:

| **COUNT** | **DATE(S)** | **TRADE SECRET** |
|---|---|---|
| ONE | From on or about March 31, 2023 to April 25, 2023 | Serrano Technology |
| TWO | From on or about March 31, 2023 to April 25, 2023 | Anaheim Technology |
| THREE | From on or about March 31, 2023 to April 13, 2023 | Mechanical Technology |

7

COUNT FOUR

[18 U.S.C. § 1001(a)(2)]

The Introductory Allegations set forth in paragraphs One through Nine of this Indictment are incorporated herein as if set forth in full.

On or about May 10, 2023, in Ventura County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely the Federal Bureau of Investigation ("FBI"), defendant Chenguang GONG ("GONG") knowingly and willfully made the following materially false statements and representations to the FBI, knowing that the statements and representations were untrue:

    a.   Defendant GONG falsely stated that he applied "only once" in approximately 2019 to a Talent Program administered by the People's Republic of China ("PRC"). Defendant GONG further stated that he "didn't apply in 2020 [or] 2021." In fact, as defendant GONG then knew, defendant GONG had applied to at least eight PRC Talent Programs between at least 2014 and 2022.

    b.   Defendant GONG falsely stated that, when he applied for the PRC Talent Programs, he "didn't offer anything for military applications." In fact, as defendant GONG then knew, defendant GONG had stated in his PRC Talent Program applications that the technology projects he was submitting to develop were valuable "[i]n fields such as national defense, military, and aerospace"; that the technology was useful for "[m]issile navigation systems" and "in military

//
//

radars"; that the company he proposed to form would provide "customization for the military and civilian fields;" and that "low-light/night vision" image sensors were useful for "military" night vision goggles.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 1834 & 2323]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 1834 and 2323, in the event of the defendant's conviction of the offenses set forth in any of Counts One through Three of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) Any article, the making or trafficking of which is prohibited by the commission of any offense for which the defendant is convicted;

   (b) Any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said offense;

   (c) Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of said offense;

   (d) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2), the convicted defendant shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold

to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL

                                        /s/
                                    Foreperson

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

DAVID T. RYAN
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section

DAVID C. LACHMAN
Assistant United States Attorney
Terrorism and Export Crimes
Section

NISHA CHANDRAN
Assistant United States Attorney
Cyber and Intellectual Property
Crimes Section