BILAL A. ESSAYLI
United States Attorney
DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorneys
Terrorism and Export Crimes and Major Frauds Sections
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5564/2429
    Facsimile: (213) 894-2927
    E-mail:    david.lachman@usdoj.gov
              nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>CHENGUANG GONG,<br><br>       Defendant. | No. CR 24-00127-JFW<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CHENGUANG GONG |

    1.   This constitutes the plea agreement between defendant CHENGAUNG GONG ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  With the exception of the agreement by the United States Attorney's Office for the Northern District of California set forth in paragraph 5(f), this agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

<u>DEFENDANT'S OBLIGATIONS</u>

2       2.   Defendant agrees to:

3           a.   At the earliest opportunity requested by the USAO and
4   provided by the Court, appear and plead guilty to count one of the
5   indictment in <u>United States v. Chenguang Gong</u>, 24-CR-00127-JFW, which
6   charges defendant with Theft of Trade Secrets, in violation of 18
7   U.S.C. § 1832.

8           b.   Not contest facts agreed to in this agreement.

9           c.   Abide by all agreements regarding sentencing contained
10  in this agreement.

11          d.   Appear for all court appearances, surrender as ordered
12  for service of sentence, obey all conditions of any bond, and obey
13  any other ongoing court order in this matter.

14          e.   Not commit any crime; however, offenses that would be
15  excluded for sentencing purposes under United States Sentencing
16  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
17  within the scope of this agreement.

18          f.   Be truthful at all times with the United States
19  Probation and Pretrial Services Office and the Court.

20          g.   Pay the applicable special assessment at or before the
21  time of sentencing unless defendant has demonstrated a lack of
22  ability to pay such assessment.

23          h.   Agree to and not oppose the imposition of the
24  following conditions of probation or supervised release:

25              i.   Defendant shall possess and use only those
26  digital devices, screen usernames, email accounts, social media
27  accounts, messaging applications, and cloud storage accounts, as well
28  as any passwords or passcodes for all such digital devices and

1  accounts, that have been disclosed to the Probation Officer upon

2  commencement of supervision.  Any new devices, accounts,

3  applications, passwords, or passcodes are to be disclosed to the

4  Probation Officer prior to the first use.  A digital device is any

5  electronic system or device that can access, view, obtain, store, or

6  transmit digital data related to email accounts, financial accounts,

7  and social media accounts.

8       ii.  All computers, computer-related devices, and

9  their peripheral equipment, used by defendant shall be subject to

10  search, seizure, and computer monitoring.  This shall not apply to

11  items used at the employment site that are maintained and monitored

12  by the employer.

13       iii. Defendant shall comply with the rules and

14  regulations of the Computer Monitoring Program.  Defendant shall pay

15  the cost of the Computer Monitoring Program.

16       iv.  Defendant shall submit defendant's person,

17  property, house, residence, vehicle, papers, computers, cell phones,

18  other electronic communications or data storage devices or media,

19  email accounts, social media accounts, cloud storage accounts, or

20  other areas under defendant's control, to a search conducted by a

21  United States Probation Officer or law enforcement officer.  Failure

22  to submit to a search may be grounds for revocation.  Defendant shall

23  warn any other occupants that the premises may be subject to searches

24  pursuant to this condition.  Any search pursuant to this condition

25  will be conducted at a reasonable time and in a reasonable manner

26  upon reasonable suspicion that defendant has violated a condition of

27  his supervision and that the areas to be searched contain evidence of

28  this violation.

3. Defendant further agrees:

a. To forfeit any and all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including but not limited to all digital devices described in Appendix A to this agreement (collectively, the "Forfeitable Property").

b. To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c. To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

4

1    f.    Not to claim that reasonable cause to seize the

2 Forfeitable Property was lacking.

3    g.    To prevent the transfer, sale, destruction, or loss of

4 the Forfeitable Property to the extent defendant has the ability to

5 do so.

6    h.    To fill out and deliver to the USAO a completed

7 financial statement listing defendant's assets on a form provided by

8 the USAO.

9    i.    That forfeiture of Forfeitable Property shall not be

10 counted toward satisfaction of any special assessment, fine,

11 restitution, costs, or other penalty the Court may impose.

12    4.    With respect to any criminal forfeiture ordered as a result

13 of this plea agreement, defendant waives (1) the requirements of

14 Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice

15 of the forfeiture in the charging instrument, announcements of the

16 forfeiture sentencing, and incorporation of the forfeiture in the

17 judgment; and (2) all constitutional and statutory challenges to the

18 forfeiture (including by direct appeal, habeas corpus or any other

19 means).  Defendant acknowledges that entry of the order of forfeiture

20 is part of the sentence that may be imposed in this case and waives

21 any failure by the Court to advise defendant of this, pursuant to

22 Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court

23 accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

24

25    5.    The USAO agrees to:

26    a.    Not contest facts agreed to in this agreement.

27    b.    Abide by all agreements regarding sentencing contained

28 in this agreement.

1        c.   At the time of sentencing, move to dismiss the

2 remaining counts of the indictment as against defendant. Defendant

3 agrees, however, that at the time of sentencing the Court may

4 consider any dismissed charges in determining the applicable

5 Sentencing Guidelines range, the propriety and extent of any

6 departure from that range, and the sentence to be imposed.

7        d.   At the time of sentencing, provided that defendant

8 demonstrates an acceptance of responsibility for the offense up to

9 and including the time of sentencing, recommend a two-level reduction

10 in the applicable Sentencing Guidelines offense level, pursuant to

11 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

12 additional one-level reduction if available under that section.

13        e.   Not seek a sentence of imprisonment above the high end

14 of the applicable Sentencing Guidelines range, provided that the

15 offense level used by the Court to determine that range is 23 or

16 higher and provided that the Court does not depart downward in

17 offense level or criminal history category. For purposes of this

18 agreement, the high end of the Sentencing Guidelines range is that

19 defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

20        f.   Except for criminal tax violations (including

21 conspiracy to commit such violations chargeable under 18 U.S.C.

22 § 371), the USAO and the United States Attorney's Office for the

23 Northern District of California will not further criminally prosecute

24 defendant for criminal violations of 18 U.S.C. § 1831, 18 U.S.C.

25 § 1832, 50 U.S.C. § 4819, or any other charge arising out of

26 defendant's conduct described in the agreed-to factual basis set

27 forth in paragraph 11 below. Defendant understands that the USAO is

28 free to criminally prosecute defendant for any other unlawful past

conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## NATURE OF THE OFFENSE

6.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Theft of Trade Secrets, in violation of 18 U.S.C. § 1832, the following must be true: (1) defendant intended to convert a trade secret to the economic benefit of someone other than the owner of the trade secret; (2) the trade secret is related to a product used in or intended for use in interstate or foreign commerce; (3) defendant intended or knew that the offense would injure any owner of that trade secret; and (4) defendant knowingly stole, or without authorization appropriated, took, or carried away such information, or without authorization, copied, duplicated, downloaded, or uploaded such information.

## PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1832, is: 10 years' imprisonment; a three-year period of supervised release; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected

immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Theft of Trade Secrets from Company 1

From January 2023 to April 2023, defendant was employed as an application-specific integrated circuit manager at a physical science and engineering research and development laboratory, headquartered within the Central District of California ("Company 1").  Company 1 maintained a laboratory that researched and developed sophisticated infrared sensors with high sensitivity, low noise, and high dynamic range.  Company 1's sensors were designed to collect electrical signals from large infrared photo detector arrays and output the data in a manner that achieved high dynamic range, low noise, high resolution, and fast readout rate performance.  In his role, defendant was responsible for managing the design, development, and performance of the readout integrated circuits used in Company 1's infrared sensors.

Company 1 developed multiple trade secrets associated with its proprietary sensor technology.  Among other technologies, Company 1 developed the Serrano Readout Integrated Circuit technology (the

"Serrano Technology"), which offered both high dynamic range  and
time-of-flight capabilities   Company 1 also developed the Anaheim
Readout Integrated Circuit technology (the "Anaheim Technology"),
which offered high sensitivity, a wide field of view, small pixel
pitch, command and data handling, and radiation hardening Company 1
also developed proprietary Integrated Dewar Cooler Assemblies (the
"Mechanical Technology") to enclose and cryogenically cool the
Serrano and Anaheim Readout Integrated Circuits.  The Serrano
Technology, Anaheim Technology, and Mechanical Technology
(collectively, the "Trade Secret Information") each constituted trade
secrets as defined in 18 U.S.C. 1839(3) and were related to products
intended for use in interstate commerce.

From at least March 31, 2023, to April 25, 2023, while defendant
was employed at Company 1, defendant copied, downloaded, and
transferred hundreds of proprietary files without authorization from
Company 1's servers to three personal digital devices: a Verbatim
flash drive bearing serial number YP32G1104008630PTL (the "Verbatim
Flash Drive"), a Western Digital external hard drive bearing serial
number WXM1E974PT0U ("WD Drive 1"), and a Western Digital external
hard drive bearing serial number WX32DC2R90LF ("WD Drive 2").

The files defendant transferred included Trade Secret
Information, including the detailed layout and specifications used to
manufacture Company's 1's readout integrated circuits (known as
"tape-out files").  To export the computer-assisted design ("CAD")
product and user libraries from Company 1's UNIX system, which hosted
the design software, defendant manually ran scripts to save the
design files in .bz2 archive files, which allowed defendant to
preserve the underlying library structure.  Defendant then

transferred the .bz2 archive files from Company 1's UNIX system to his work laptop using a file transfer protocol program, and then copied those files from his work laptop to his personal digital devices.

On March 31, 2023, defendant copied approximately 760 files from his work laptop to WD Drive 1, including approximately 185 .bz2 archive files containing the entire product and user libraries for the Anaheim Technology to WD Drive 1.  In conjunction, these trade-secret product and user libraries contained the schematic information necessary to implement the architecture and circuit design for Anaheim Technology, as well as the related physical and digital characteristics of the integrated circuits.  The product libraries also included the information required to allow a semiconductor foundry to "print" all of the necessary layers to manufacture the circuits.  The user libraries -- including the user libraries of defendant's supervisor and other colleagues, contained many of the product design choices and design history.  On April 5, 2023, defendant copied approximately 6 archive and CAD design files from his work laptop to the Verbatim Flash Drive.  These files contained the blueprints to replicate and manufacture the Serrano Technology. On April 6, 2023, defendant transferred approximately 939 files from his work laptop to WD Drive 2, including the same archive and CAD design files containing the blueprints to replicate and manufacture the Serrano Technology, as well as at least two files containing the designs for the Mechanical Technology.

Defendant also copied emails, presentations, and testing results from Company 1 relating to the design and development of the Trade Secret Information which included test results, issue logs, and trial

probe results relating to the Serrano Technology, as well as summaries of testing and issue identification, detailed product specifications, and implementation details for client review meetings relating to the Anaheim Technology.  Many of the files defendant copied to his personal digital devices included documents marked as "PROPRIETARY," "EXPORT CONTROLLED," "FOR OFFICIAL USE ONLY," and "PROPRIETARY INFORMATION."

At all relevant times, defendant knew that he was prohibited by Company 1's policies from copying, downloading, and transferring Company 1's trade secrets onto his personal digital devices.  Company 1 provided training to its employees, including defendant, regarding their obligation to protect Company 1's proprietary and trade secret information.  This training provided examples of protected proprietary information and specifically prohibited connecting any personally owned portable electronic devices and removable media, including external hard drives, to employees' work laptops. Defendant attended this training on January 30, 2023, and signed a form acknowledging that he understood the training the following day.

On April 26, 2023, after Company 1 discovered that defendant had copied, downloaded, and transferred hundreds of proprietary files from Company 1's servers to defendant's personal digital devices, Company 1 terminated defendant's employment.  At the time of his termination, Company 1 recovered the Verbatim Flash Drive from defendant's workstation.

Theft of Trade Secrets from Company 2

From approximately 2009 to May 2014, defendant worked as an integrated circuit design manager for a U.S. information technology company in Santa Clara, California ("Company 2").  While employed by

1   Company 2, defendant worked on developing analog-to-digital

2   converters ("ADCs") which convert analog signals (such as sound,

3   light, or temperature) into a usable digital format and have many

4   uses, including military applications.  At all relevant times, the

5   export from the United States of technology for the development or

6   production of ADCs having a resolution of 14 bit or more, but less

7   than 16 bit, with a "sample rate" greater than 250 Mega Samples Per

8   Second ("MSPS"), and of ADCs having a resolution of 16 bit or more

9   with a "sample rate" greater than 65 MSPS, was controlled by the U.S.

10  Department of Commerce under Export Control Classification Numbers

11  ("ECCNs") 3A001.a.5.a.4 and 3A001.a.5.a.5, respectively.  The export

12  to China of this ADC technology without a license was prohibited.

13      While employed at Company 2, and without authorization,

14  defendant copied thousands of proprietary and trade secret files from

15  Company 2's servers to his personal digital storage devices.  These

16  files included tape-out files containing the trade secret designs for

17  many of Company 2's products.  For example, on a computer tower and

18  external hard drive seized from his residence in Thousand Oaks,

19  California, on May 8, 2023, defendant possessed the tape-out design

20  files for Company 2's 14-bit 250 MSPS ADC and its 16-bit 370 MSPS

21  ADC.  On a laptop seized from his home in San Jose, California, on

22  February 6, 2024, defendant possessed design files for these ADCs, as

23  well as planning documents and presentations from Company 2 relating

24  to the design, development, and marketing of its high-performance

25  ADCs.

26      Theft of Trade Secrets from Company 3

27      From May 2015 to October 2019, defendant was a complementary

28  metal-oxide semiconductor ("CMOS") image sensor design manager for

13

the U.S. subsidiary of an international defense, aerospace, and security company in San Jose, California ("Company 3").  While employed by Company 3, defendant worked on the development and design of low-light image sensors.  Without authorization, defendant copied proprietary and trade secret files from Company 3's servers to his personal digital storage devices which included the trade secret designs and tape-out files for many of Company 3's products.  For example, on hard drives seized from his home in Thousand Oaks, California, on May 8, 2023, defendant possessed the tape-out files and designs for high-definition format, ultra-low noise CMOS sensors developed by Company 3 for use in extreme low-light imaging applications.  On a laptop seized from his home in San Jose, California on February 6, 2024, defendant also possessed trade-secret design files for other image sensors developed by Company 3 and numerous proprietary documents relating to the design, development, and marketing of Company 3's image sensor products.

Other Conduct

From at least 2014 to 2022, including while defendant was employed at Company 2 and Company 3, defendant submitted applications to talent plans in the People's Republic of China.  In his submissions, defendant proposed projects that included the development of high-performance ADCs and a 4K resolution CMOS sensor. In certain project proposals, defendant used graphics that he had taken from materials belonging to Companies 2 and 3.  Defendant's submissions included funding requests for his proposed ADC project, which totaled approximately $5.6 million.

On August 10, 2014, defendant submitted a project proposal to the Hangzhou Qianjiang Economic Development Zone "3615" Talent

14

Introduction Plan.  In his submission, defendant proposed to develop

16-bit 100-370 MSPS ADC converters, explaining that in "national

defense" and "military" settings, high-performance ADCs "directly

determine the accuracy and range of radar systems."  Defendant stated

that the export-controlled nature of the products was a strength of

his proposal, noting that high-performance ADCs were "completely

monopolized by major American manufacturers such as . . . [Company

2]" and were "[i]ncluded on the U.S. embargo list."  Defendant

further stated that it was "almost impossible" for Chinese

institutions to obtain high-performance ADCs, but that his proposed

project would "get rid of the United States blockade of China's

product lines in this category" and bring China's ADC development to

the same level as international companies including Company 2.

In January 2017, defendant submitted a proposed project to

develop high-performance ADCs to an email address associated with the

38th Research Institute of China Electronics Technology Group

Corporation.  Defendant reiterated the military utility of his

proposal, explaining that the increased accuracy would result in

increased detection distance of radar systems.  Defendant emphasized

that there were "almost no" companies in China capable of developing

and producing such products, which were subject to U.S. export

controls.

In May 2019 and September 2019, while defendant was employed by

Company 3, defendant traveled to China to attend the 12th Nanjing

International Exchange and Cooperation Conference for Chinese

Overseas Students and the Xihu District 325 Talent Plan.  In these

proposals, defendant underscored the military applications of high-

performance ADCs.  In an email to a talent plan recruiter after

defendant returned from the second trip, he expressed frustration
that he had not received a response to his proposal at the September
2019 conference, stating that he "took the risk (because I work for
[Company 3], a US military company) thinking that I could do
something for [China's] high-end military integrated circuits."

In 2020, defendant applied to the Maker World-Hangxiang Future
2020 Hangzhou Overseas High-Level Talent Innovation and
Entrepreneurship Competition to seek funding for his high-performance
ADC project.  Defendant reached the semi-finals of the competition
and submitted a video presentation in which he explained his 16-bit
370-500 MSPS ADC project proposal.  In the video, defendant also
explained the functionality of a high-performance 4K resolution CMOS
sensor and embedded the same video file showing the capabilities of a
high-performance 4K resolution CMOS image sensor that he had copied
from Company 3.  In the embedded video, the model number of the
sensor developed by Company 3 is clearly visible.  Defendant also
stated that his product extensions included a low-light and night-
vision dual-use CMOS image sensors for use in military night-vision
goggles and civilian applications.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss More than $3,500,000 and Less than $9,500,000 | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Knowledge or Intent that Offense Would Benefit Foreign Government | +4 | U.S.S.G. § 2B1.1(b)(14)(B) |

The government agrees that it will not seek, argue for, or suggest in any way any other adjustment, departure or variance that would increase the defendant's sentencing guideline range.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

17

1  represented by counsel -- and if necessary have the Court appoint

2  counsel -- at every other stage of the proceeding.

3          d.    The right to be presumed innocent and to have the

4  burden of proof placed on the government to prove defendant guilty

5  beyond a reasonable doubt.

6          e.    The right to confront and cross-examine witnesses

7  against defendant.

8          f.    The right to testify and to present evidence in

9  opposition to the charges, including the right to compel the

10  attendance of witnesses to testify.

11          g.    The right not to be compelled to testify, and, if

12  defendant chose not to testify or present evidence, to have that

13  choice not be used against defendant.

14          h.    Any and all rights to pursue any affirmative defenses,

15  Fourth Amendment or Fifth Amendment claims, and other pretrial

16  motions that have been filed or could be filed.

17      17.    Understanding that the government has in its possession

18  digital devices and/or digital media seized from defendant, defendant

19  waives any right to the return of digital data contained on those

20  digital devices and/or digital media and agrees that if any of these

21  digital devices and/or digital media are returned to defendant, the

22  government may delete all digital data from those digital devices

23  and/or digital media before they are returned to defendant.

24          WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACH

25      18.    Defendant understands that, with the exception of an appeal

26  based on a claim that defendant's guilty plea was involuntary, by

27  pleading guilty defendant is waiving and giving up any right to

28  appeal defendant's conviction on the offense to which defendant is

pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statute of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL OF SENTENCE</u>

20.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 23 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory

maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

21.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 23 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

22.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

24.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

25.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea; and (b) the USAO will be relieved of all its obligations under this agreement.

26.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1                    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          31.    The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   BILAL A. ESSAYLI
    United States Attorney

9

10                                                    July 17, 2025
                                                      Date
    DAVID C. LACHMAN
11  NISHA CHANDRAN
    Assistant United States Attorneys

12

13                                                    06/26/2025

14
    CHENGUANG GONG                                     Date
15  Defendant

16

17                                                    6/27/2025

18  CRAIG WILKE                                        Date
    Attorney for Defendant
19  CHENGUANG GONG

20

21

22

23

24

25

26

27

28

                                      25

1

<u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charge and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

_____        06/26/2025

20 CHENGUANG GONG                         Date
   Defendant

21

22

23

24

25

26

27

28

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am CHENGUANG GONG's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        6/27/2025
CRAIG WILKE                              Date
Attorney for Defendant
CHENGUANG GONG

APPENDIX A

| # | Description | Serial Number |
|---|---|---|
| 1 | One Verbatim flash drive | YP32G1104008630PTL |
| **2** | One Western Digital external drive | WX32DC2R90LF |
| 3 | One Apple iPad | DMPDP0BTNRCD |
| 4 | One Huawei phone | MHA-AL00 |
| 5 | One Seagate 1TB external hard drive | NA05VEQ4 |
| 6 | One Aigo 500GB hard drive | CID780213901920 |
| 7 | One Kingston 3.9GB flash drive | CCBB1209272139491005000007 |
| 8 | One 4GB flash drive | 033300000001C09C |
| 9 | One Fairchild Imaging 8GB flash drive | 04EGFBCGH0OAVEX9 |
| 10 | One Solar Magic 1GB flash drive | 20165700191EF808 |
| 11 | One Seagate 1TB hard drive, located in an Acer Veriton computer tower | 9XG2R2X6 |
| 12 | One Hitachi 500GB hard drive, located in an Acer Veriton computer tower | Y9H4PXNB |
| 13 | One Patriot Memory 4GB flash drive | 079908082FB03DBD |
| 14 | One Silanna 8GB flash drive | 9207075DB8304424452 |
| 15 | One Solar Magic 1GB flash drive | 20173200396FCB08 |
| 16 | One Lenovo ThinkPad laptop | PF-1JCIUD |
| 17 | One Western Digital My Book 3TB hard drive | WMC1T3046146 |
| 18 | One Seagate 4TB hard drive | Z3066GPD |

| 19 | One Solar Magic 1GB flash drive | 20165700191EF808 |
|----|---------------------------------|------------------|
| 20 | One Lenovo laptop | CBU0860661 |
| 21 | One blue T-Mobile cell phone | 861690067068946 |
| 22 | One blue USB drive | Unknown serial number |
| 23 | One Western Digital 60GB hard drive | WXEZ04039242 |
| 24 | One SP 128GB flash drive | 087E04803080 |
| 25 | One Verbatim 32GB flash drive | 07010C3B9C207756 |
| 26 | One Western Digital 5TB hard drive | WXC2D6325Z0L |
| 27 | One Ranxiana 1TB SSD hard drive | S3ZHNA0M504509 |
| 18 | One Verbatim 31GB flash drive | 0721227DOE056C40 |
| 29 | One Netac 16GB flash drive | AA00000000000489 |
| 30 | One Dell laptop | 7JKOZW2 |
| 31 | One Sun Microsystems computer | FW01430673 |
| 32 | One Seagate Barracuda 500GB hard drive, located inside a Dell X10-60256 computer | 9VMJDFCG |
| 33 | One Western Digital 2TB hard drive, located inside a Dell X10-60256 computer | WMAZA1937422 |
| 34 | One Seagate Barracuda 400GB hard drive, located inside a Dell X10-60256 computer | 3PM0P66A |
| 35 | One Western Digital 500GB hard drive, located inside a Dell X10-60256 computer | WCASYD522772 |
| 36 | One Seagate 2TB hard drive, located inside a Dell X10-60256 computer | Z561E1S |

| 37 | One Seagate Barracuda 1.5TB hard drive, located inside a Dell X10-60256 computer | 9VS0LWG3 |
| 38 | One Lenovo laptop | R9T1YHHV12 |
| 39 | One Antec Design computer | Unknown serial number |